# ORIGINAL

# In the United States Court of Federal Claims FILED

No. 16-1660C
Pro Se
(Filed: September 29, 2017)

SEP 2 9 2017

U.S. COURT OF
FEDERAL CLAIMS

|  |  |  |
|---|---|---|
| ESTATE OF MATTHEW GRANT et al, | ) ) ) | Keywords: Pro Se Complaint; RCFC 12(b)(1); Motion to Dismiss; Equal Credit Opportunity Act; Pigford Litigation; USDA; Statute of Limitations; 28 U.S.C. § 2501; Summary Judgment; RCFC 56. |
| Plaintiffs, | ) ) ) |  |
| v. | ) ) |  |
| THE UNITED STATES OF AMERICA, | ) ) |  |
| Defendant. | ) ) |  |

*Gary Grant*, Tillery, NC, Pro Se.[1]

*Michael A. Rodriguez*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, for Defendant, with whom were *Deborah A. Bynum*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Chad A. Readler*, Acting Assistant Attorney General. *J. Carlos Alarcon*, Attorney-Advisor, and *Brandi A. Peters*, Senior Counsel, U.S. Department of Agriculture, Office of the General Counsel, Civil Rights, Labor and Employment Law Division, Of Counsel.

## OPINION AND ORDER

**KAPLAN, Judge.**

The plaintiffs in this case are the estates of two African American farmers, Matthew and Florenza Grant. The complaint alleges that the Grants were victims of racial discrimination by the U.S. Department of Agriculture (USDA) in the administration of its loan programs for farmers. Specifically, the estates allege that in 1998, the Grants and the USDA entered into a settlement agreement to compensate the Grants for discrimination they had suffered. But, according to Plaintiffs, the government never paid them the compensation they were owed under the agreement. Ultimately, Plaintiffs filed this suit alleging a breach of contract, along with a number of other claims relating to their allegations of discrimination.

Before the Court is the government's motion to dismiss and for summary judgment. The government's primary assertion is that there was no valid agreement between the Grants and the United States entitling them to compensation for discrimination, and that as a result, it is entitled

---

[1] Mr. Grant is the son of Matthew and Florenza Grant and the executor of their estates. See Compl. at 3, Docket No. 1; see also Compl. Exs. 1, 7.

to summary judgment on Plaintiffs' breach claim. Alternatively, it argues that, assuming the existence of a valid agreement, the Court lacks jurisdiction over the breach claim because it is barred by the statute of limitations. The government also asserts that Plaintiffs' other claims are outside the Court's jurisdiction and must be dismissed. Plaintiffs have filed an opposition as well as two identical motions for discovery.

For the reasons set forth below, the Court concludes that it lacks jurisdiction over all of Plaintiffs' claims, and the government's motion to dismiss is therefore **GRANTED**. Plaintiffs' motions for discovery are **DENIED** as moot.[2]

## BACKGROUND[3]

### I.     The Grants' Resolution Agreement with the USDA

Matthew and Florenza Grant were African American farmers who owned farmland in North Carolina. See Am. Compl. ¶¶ 1, 18–19, Docket No. 15. During the 1970s, the Grants applied for and received loans from the Farmers Home Administration (FHA) to operate their farm. See Def.'s Mot. to Dismiss & for Summ. J. (Def.'s Mot.) App. at 11, Docket No. 17. From the 1970s through the early 1990s, the Grants had numerous interactions with the FHA in relation to their loans, including exchanges related to loan servicing, repayment, and loan restructuring. See id. at 11–12. The FHA denied most of the Grants' applications and requests during that time. See id.

In 1995, Matthew Grant filed a claim of discrimination with the USDA's Farm Service Agency (FSA), the successor agency to the FHA. In it, he alleged that the FHA and FSA had engaged in racial discrimination in their processing of the Grants' loan applications and in servicing and managing the Grants' existing loans. See Am. Compl. ¶¶ 1–3, 9; see also Def.'s Mot. App. at 11–15. In 1997, the USDA's Office of Civil Rights issued a final agency decision in which it determined that the FSA had discriminated against Matthew Grant in relation to the farm loans provided to him and others for which he had applied. See Am. Compl. ¶ 2.

On March 2, 1998, Lloyd E. Wright, the director of the USDA's Office of Civil Rights, and Matthew Grant executed a "Final Resolution Agreement" to settle Mr. Grant's claims against the USDA. Am. Compl. Ex. 4. In it, the parties agreed that the settlement "constitute[d] a full, complete, and final settlement of all claims for relief for the years 1994 through 1998 raised in Mr. Grant's December 6, 1995, discrimination complaint submitted to USDA."[4] Id. The

---

[2] Along with their complaint, Plaintiffs filed a motion for leave to proceed in forma pauperis. Docket No. 4. The Court **GRANTS** that motion for the sole purpose of dismissing the complaint.

[3] The facts in this section are based on the documents attached to the parties' briefs as well as the allegations in Plaintiffs' complaint and amended complaint, which the Court assumes to be true for purposes of deciding the motion to dismiss.

[4] The settlement also resolved "any and all claims Mr. Grant may have [had] against USDA based on facts occurring prior to the date of th[e] agreement, except for those events between the years 1972 and 1993 that were raised in Mr. Grant's December 6, 1995, discrimination

USDA agreed, among other things, to pay Matthew Grant $312,000 "as soon as practicable but no later than 30 calend[a]r days after th[e] agreement [w]as . . . signed by all parties, reviewed by the Department of Justice (DOJ), and, if DOJ approval [wa]s required, approved by DOJ." Id. ¶ 1. It also agreed to "pay all of Mr. Grant's unpaid outstanding debt owed to FSA," and "forever discharge and hold harmless [Mr. Grant] from liability for such debt." Id. ¶ 2.

As noted, the settlement agreement was "subject to review by DOJ." Id. ¶ 8. The parties agreed that "[i]n the event that DOJ [did] not approve th[e] agreement, neither party [would be] under any obligation to carry out the terms of the agreement and Mr. Grant [could] have reinstated the complaint that [wa]s the subject of the agreement." Id.

In their complaint here, Plaintiffs allege that after the parties signed the agreement neither the USDA nor DOJ informed them as to the status of any DOJ review. See Am. Compl. ¶ 15. But the record reveals that, at least as of the year 2000, the Grants understood that DOJ had declined to approve the settlement agreement. See Def.'s Mot. App. at 15. In any event, the government never paid Matthew Grant any money pursuant to the Resolution Agreement. Am. Compl. ¶ 7; see also id. ¶¶ 15–16; Def.'s Mot. at 7.

Approximately a decade later, in 2008 and 2009, Gary Grant wrote to Presidents Bush and Obama, respectively, regarding the USDA's failure to pay his father compensation under the Resolution Agreement. Am. Compl. Ex. 8; Compl. Ex. 7. In the letter to President Bush, dated August 6, 2008, Mr. Grant wrote that "[t]he USDA did not live up to" the "1998 'Final Resolution Agreement.'" Compl. Ex. 7. He also noted that as a result, his parents had joined a lawsuit against the USDA. Id. Mr. Grant requested a meeting between the "USDA and the Moore-Grant heirs to negotiate a final and just settlement in the discrimination matter." Id. On March 14, 2009, Mr. Grant wrote to President Obama, asserting, among other things, that "[b]ecause of the government's failure to live up to the 'Final Settlement Agreement,' on October 19, 2000, [his] parents became named plaintiffs in a class action lawsuit comprised primarily of North Carolina women and African American farmers." Am. Compl. Ex. 8. He sought President Obama's assistance in addressing the discrimination as well as debt issues affecting his late parents' farm. Id.

Sometime later, Gary Grant contacted Congressman G.K. Butterfield. See Am. Compl. Ex. 7. He asserted that his parents had entered into an agreement with the USDA but that the USDA never "enforced" it. Id. On September 29, 2016, Congressman Butterfield wrote to then-Secretary of Agriculture Tom Vilsack, inquiring about the USDA's agreement with Matthew Grant. Id. On November 30, 2016, the USDA's Office of the General Counsel responded to Congressman Butterfield. Compl. Ex. 8. It asserted that "there never was a fully executed agreement." Id. Rather, according to the USDA, "[a] tentative settlement agreement was entered into between Mr. Grant and Mr. Lloyd Wright . . . in or about March 1998," but it "required

complaint." Am. Compl. Ex. 4 ¶ 6. As Mr. Wright explained, the settlement agreement only covered discrimination occurring during the period of time which at that point was not barred by the statute of limitations, but the parties agreed that Mr. Grant could pursue compensation for discrimination occurring in previous years if Congress amended the applicable statute of limitations. Am. Compl. Ex 5 ¶¶ 5–6; see also Am. Compl. Ex. 4 ¶¶ 6, 9.

approval by the U.S. Department of Justice." Id. "The DOJ," it continued, "declined to approve the settlement, the settlement was thus void, and the Estate of Mr. Grant filed subsequent actions in federal district court." Id. Finally, the USDA noted that it had "settled all complaints of discrimination with the Estate of Matthew Grant through [its] attorney Stephon Bowens" in 2011. Id.

## II.   The Pigford Litigation

In the meantime, in 1997, the Pigford class action lawsuit was filed. The plaintiffs in Pigford alleged that the USDA had violated the Equal Credit Opportunity Act (ECOA) in that it had "willfully discriminated" against African American farmers "on the basis of their race when it denied their applications for credit and/or benefit programs or delayed processing their applications," and that "when [they] filed complaints . . . with the USDA, the USDA failed properly to investigate and resolve those complaints." Pigford v. Glickman, 185 F.R.D. 82, 86, 89 (D.D.C. 1999), aff'd, 206 F.3d 1212 (D.C. Cir. 2000).[5]

The Pigford litigation resulted in a consent decree establishing a "two-track dispute resolution mechanism" to provide class members with monetary compensation and other equitable relief. See id. at 95, 112–13. The district court "retain[ed] jurisdiction to enforce the Consent Decree." See id. at 98; see also Pigford v. Glickman, 206 F.3d at 1216. On November 2, 2015, the district court "entered a wind-down stipulation and order terminating the stipulations of the [Pigford] consent decree, with limited exceptions." Parker v. United States, 131 Fed. Cl. 1, 8 (2017).

Both Matthew and Florenza Grant were included within the certified class in Pigford. See Wise v. Glickman, 257 F. Supp. 2d 123, 129 (D.D.C. 2003). Matthew Grant, however, opted out of the Pigford class. Am. Compl. Ex. 4; see also Wise, 257 F. Supp. 2d at 129. Florenza Grant did not. Wise, 257 F. Supp. 2d at 129. As the government points out, the current record does not

---

[5] The lawsuit was filed after Congress passed legislation that tolled the statute of limitations for actions under ECOA where claimants had filed complaints of discrimination with the USDA during certain time periods, as long as such actions were filed by October 21, 2000. See Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999, Pub. L. 105-277, § 741(a), 112 Stat. 2681 (1998); see also Pigford, 185 F.R.D. at 88–89; Allen v. United States, No. 03-92C, 2005 WL 6112631, at *4 (Fed. Cl. May 10, 2005). This waiver of the statute of limitations was set out in § 741 of the legislation. In § 741(d), Congress gave the Court of Federal Claims and the district courts "exclusive original jurisdiction" over "eligible" complaints filed pursuant to § 741, as well as over actions for review of USDA administrative determinations where claimants chose to re-file their administrative complaints with the USDA rather than filing suit. See Pub. L. 105-277, § 741(d). The USDA regulations for these renewed administrative proceedings are codified at 7 C.F.R. Part 15f. See Benoit v. U.S. Dep't of Agric., 577 F. Supp. 2d 12, 17–18 (D.D.C. 2008), aff'd, 608 F.3d 17 (D.C. Cir. 2010); see also Administrative Civil Rights Adjudications Under Section 741, 63 Fed. Reg. 67,392-01 (Dec. 4, 1998) (codified at 7 CFR Part 15f).

reveal whether Ms. Grant ever pursued either relief track provided for in the Pigford consent decree. See Def.'s Reply in Supp. of Mot. to Dismiss at 4 n.3, Docket No. 20.

## III.   The Grants' Previous Litigation

As Gary Grant referenced in his letters to Presidents Bush and Obama, in light of the USDA's "failure to live up to" the Resolution Agreement, Matthew and Florenza Grant were named as plaintiffs in another purported class action lawsuit that was filed against the Secretary of Agriculture on October 19, 2000. This action, like Pigford, was filed in the district court for the District of Columbia. Def.'s Mot. App. at 1; see also Wise, 257 F. Supp. 2d at 126–27 (describing lawsuit as "another in a series of suits filed after Congress, responding to reports that USDA dismantled its civil rights enforcement program in the early 1980s, extended the statute of limitations . . . for 'eligible complaints' of discrimination alleged to have taken place at USDA between 1981 and 1996").[6] In the complaint, the plaintiffs alleged that the USDA "discriminate[d] against African-American and female family farmers" and "maintained a system whereby county administrators intentionally and pervasively discriminate[d]" against them "with regard to their participation in federal farm credit and non-credit benefit programs." Def.'s Mot. App. at 2. Particularly with respect to the Grants, the complaint also alleged that "the Grants and Mr. Wright executed the [1998] settlement agreement," but that "the U.S. Department of Justice (DOJ) refused to sign" it. Id. at 15.

On March 17, 2009, the District of Columbia district court transferred the case to the Eastern District of North Carolina. Order, Wise v. Vilsack, No. 00-2508 (D.D.C. Mar. 17, 2009), ECF No. 51. On January 26, 2011, the North Carolina district court dismissed the complaint for failure to state a claim. Order, Grant v. Vilsack, No. 5:10-CV-201-BO (E.D.N.C. Jan. 26, 2011), ECF No. 85. Matthew Grant's estate then appealed the dismissal to the Court of Appeals for the Fourth Circuit, Notice of Appeal, Grant v. Vilsack, No. 5:10-CV-201-BO (E.D.N.C. Feb. 26, 2011), ECF No. 87, but on September 6, 2011, the parties settled the case in lieu of further litigation, Def.'s Mot. App. at 37–38. Gary Grant, as executor of the estate, and the USDA agreed that "the settlement . . . [was] based upon partial debt forgiveness and the release of all claims by the plaintiff against defendants." Def.'s Mot. App. at 37. Specifically, the parties agreed that the "settlement resolve[d] all issues presented in this civil action and plaintiff Estate of Matthew Grant releases the Secretary of the United States Department of Agriculture, the USDA . . . , and the United States from any civil or administrative claims arising before the date of this settlement agreement, including but not limited to all discrimination claims raised in the plaintiff's complaint." Id. at 38.

## IV.   This Action

A little over five years later, on December 19, 2016, Gary Grant filed suit here on behalf of his parents' estates. See Docket No. 1. The estates named as defendants twenty-one individuals including then-President Obama and then-Secretary Vilsack. Plaintiffs made a variety of allegations, including that the USDA breached the 1998 Resolution Agreement. See id.

---

[6] Because Florenza Grant did not opt out of the Pigford class, her claims in this second action were precluded and ultimately dismissed. Wise, 257 F. Supp. 2d at 129.

Specifically, Plaintiffs alleged that the named defendants "collectively, negligently or intentionally, and maliciously violated the 1998 USDA/Grant Resolution Agreement by refusing to honor the contract with payment to the Grants." Id. ¶ 48. Plaintiffs also included various assertions of jurisdiction and alleged violations of constitutional and statutory provisions including the Fourth, Eighth, and Fourteenth Amendments, ECOA, the Civil Rights Act of 1964, North Carolina state statutes and its constitution, and the Freedom of Information Act (FOIA), among others. See, e.g., id. ¶¶ 6, 37–46. Plaintiffs sought $25,000,000 for breach of the agreement, $75,000,000 for "nearly 20 years of continued discrimination," $25,000,000 in punitive damages, and attorneys' fees. Id. ¶ 65.

Along with their complaint, Plaintiffs included a motion for a temporary restraining order with respect to the FOIA claims and a motion to use the court's electronic filing system. See Order at 2–3 & n.2, Docket No. 5. On December 21, 2016, the Court denied both requests. Id. at 3 & n.2. On February 13, 2017, Plaintiffs filed a "motion for default judgment," alleging that the individual named defendants had failed to respond in a timely manner pursuant to the Federal Rules of Civil Procedure. See Mot. for Default J. at 1–2, Docket No. 8. On February 22, 2017, the Court denied Plaintiffs' motion, noting that proceedings in this court are governed by the Rules of the Court of Federal Claims (RCFC), and that pursuant to those rules, the government had timely filed a request for an extension, which the Court had granted. Order at 1–2, Docket No. 12. The Court also raised the issue of subject matter jurisdiction sua sponte and dismissed Plaintiffs' claims against all defendants other than the United States for lack of subject matter jurisdiction. Id. at 2.

On April 17, 2017, with the Court's leave, Plaintiffs filed an amended complaint. Docket No. 15; see also Docket Nos. 13–14. Its title states: "Administrative Review Pursuant [to] 52.1 and Motion to Stay Action and Remand to Administrative Law Judge Pursuant [to] RCFC 52.2." Docket No. 15. Plaintiffs name the United States as defendant, but also persist in naming former Secretary Vilsack as an additional defendant. See id. The amended complaint appears to set out an extensive background discussion of previous litigation against the USDA for discrimination, including large portions of the court's decision in Parker v. United States, 131 Fed. Cl. 1 (2017), verbatim. See id. at 3–9. It also restates many of the original complaint's allegations regarding the Grants and the alleged breach of the 1998 Resolution Agreement. See id. at 9–14. Plaintiffs also appear to have dropped the other causes of action set forth in their initial complaint, replacing them in the amended complaint with new allegations of negligence, fraud, a violation of § 741 of the 1999 omnibus legislation, breach of the implied duty of good faith and fair dealing based upon the USDA's "repudiation of contract of the Pigford consent decree," and violations of § 14012 of the 2008 Farm Bill and the Due Process Clause of the Fifth Amendment. Id. at 14–27. Plaintiffs request that the "matter be remanded back to the ALJ with the instructions to have a formal hearing on the merits within 120 days of the court order," a stay while the remand is pending, and $10,000,000 for "continued discrimination stemming from breach of contract." Id. at 28.

On May 4, 2017, the government filed a motion to dismiss and for summary judgment. Docket No. 17. Plaintiffs responded on June 5, 2017, and have also filed two identical motions for discovery. Docket Nos. 16, 18–19.

## DISCUSSION

### I.  Motions to Dismiss for Lack of Subject Matter Jurisdiction

In deciding a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true all undisputed facts in the pleadings and draws all reasonable inferences in favor of the plaintiff. Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011). But the court may "inquire into jurisdictional facts" outside of the pleadings to determine whether it has jurisdiction. Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991).

It is well established that complaints that are filed by pro se plaintiffs are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Nonetheless, even pro se plaintiffs must persuade the court that jurisdictional requirements have been met. Bernard v. United States, 59 Fed. Cl. 497, 499, aff'd, 98 F. App'x 860 (Fed. Cir. 2004).

### II.  The Tucker Act

Pursuant to the Tucker Act, the United States Court of Federal Claims has jurisdiction to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a) (2012). The Tucker Act serves as a waiver of sovereign immunity and a jurisdictional grant, but it does not create a substantive cause of action. Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008). A plaintiff, therefore, must establish that "a separate source of substantive law . . . creates the right to money damages." Id. (quoting Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part)).

### III.  Plaintiffs' Breach Claim

Because federal courts are not courts of general jurisdiction, they must always satisfy themselves of their subject matter jurisdiction over a case as a "threshold" matter. Fanning, Phillips, Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998); see also Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1346 (Fed. Cir. 2008) (noting that a court may raise subject matter jurisdiction sua sponte at any time). As discussed below, the statute of limitations applicable to actions in this court is jurisdictional in nature. Therefore, although the government's first argument is that it is entitled to summary judgment with respect to Plaintiffs' breach claim, its alternative argument that the Court lacks subject matter jurisdiction over the claim because it is barred by the statute of limitations must be addressed first.

The statute of limitations for actions in this court states that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. This statute of limitations is jurisdictional. John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 133–34 (2008); San Carlos Apache Tribe v. United States, 639 F.3d 1346, 1349–50 (Fed. Cir. 2011). "A cause of action cognizable in a Tucker Act suit accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, i.e., when 'all events have occurred to fix the

Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (quoting Nager Elec. Co. v. United States, 166 Ct. Cl. 234, 240 (1966)). A cause of action for breach of contract accrues when the breach occurs. Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998).

Plaintiffs' complaint was filed December 19, 2016. Docket No. 1. As a consequence, the Court lacks subject matter jurisdiction over Plaintiffs' breach claim if it accrued prior to December 19, 2010. See 28 U.S.C. § 2501. Plaintiffs, however, do not allege when the breach occurred. Nor do they identify any specific theory of breach. But, it is undisputed that by October 2000, DOJ had declined to approve the Resolution Agreement, and as a result, the USDA was not going to pay Matthew Grant. See Def.'s Mot. App. at 15; see also Compl. Ex. 7; Am. Compl. Ex. 8. Thus, on October 19, 2000, Matthew and Florenza Grant filed suit against the Secretary of the USDA, alleging that "the Grants and Mr. Wright executed the [1998] settlement agreement," but that "the U.S. Department of Justice (DOJ) refused to sign" it. Def.'s Mot. App. at 15. Plaintiffs have since described that lawsuit as resulting from "the government's failure to live up to the" Resolution Agreement. Am. Compl. Ex. 8; see also Compl. Ex. 7. Any breach, therefore, occurred prior to October 2000. Accordingly, this suit was filed more than sixteen years after any alleged breach took place and more than ten years after the statute of limitations for that breach expired.

Plaintiffs bear the burden of demonstrating the Court's jurisdiction by a preponderance of the evidence. M. Maropakis Carpentry, Inc. v. United States, 609 F.3d 1323, 1327 (Fed. Cir. 2010) (citing Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988)). For the reasons set forth above, they have not met this burden. Accordingly, Plaintiffs' breach claim must be dismissed. RCFC 12(h)(3).[7]

Finally, the Court notes that, even if the statute of limitations was not a bar, the government would be entitled to summary judgment as to Plaintiffs' breach of contract claim.[8]

---

[7] Plaintiffs' amended complaint also contains allusions to a breach of the covenant of good faith and fair dealing implied in the 1998 Resolution Agreement and, seemingly, the Pigford consent decree. See Am. Compl. at 9, 24. There are no factual allegations to support this cause of action. To the extent that the claim relates to the government's failure to pay the Grants pursuant to the Resolution Agreement, it is likewise barred by the statute of limitations.

[8] The standards for granting summary judgment are well established. Summary judgment may be granted where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. RCFC 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. An issue is genuine if it "may reasonably be resolved in favor of either party." Id. at 250. "The moving party bears the burden of establishing the absence of any genuine issue of material fact," and all significant doubts regarding factual issues must be resolved in favor of the party opposing summary judgment. Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390 (Fed. Cir. 1987). But, "the party opposing summary judgment must show an evidentiary conflict on the record; mere denials or conclusory statements are not sufficient." Id. at 1390–91. "[E]ntry of summary judgment is appropriate against a [party] 'who fails to make a showing

To prevail on a breach of contract claim, a party must establish: 1) a valid contract between the parties; 2) an obligation or duty arising out of the contract; 3) a breach of that duty; and 4) damages caused by the breach. San Carlos Irrigation & Drainage Dist. v. United States, 877 F.2d 957, 959 (Fed. Cir. 1989). The government argues that it is undisputed that DOJ did not in fact approve the agreement, that as a result no valid contract exists, and, accordingly, that it is entitled to judgment as a matter of law. Def.'s Mot. at 5. The Court agrees.

If in a purported contract the parties agree that the compact is subject to the approval of another person, that provision is a condition precedent to the validity of the agreement, and the contract is only tentative and not binding absent that approval. Cutler-Hammer, Inc. v. United States, 194 Ct. Cl. 788, 794 (1971) (stating that a provision subjecting an agreement to the approval of another "is alone sufficient to negate the existence of a contract until the approval is granted"); see also Wells v. United States, 199 Ct. Cl. 324, 337 (1972) (observing that "[w]here action with reference to the contract to be executed between the parties is subject to approval by another and that approval is not subsequently given, no binding contract exists on which the United States may be required to respond in damages as for a breach" (quotation omitted)); Monroe v. United States, 35 Ct. Cl. 199, 205 (1900); Darragh v. United States, 33 Ct. Cl. 377, 391 (1898) (concluding that a provision subjecting the purported contract to approval of the Quartermaster General was "a condition precedent to the legal effect of the agreement," and that the "alleged agreement had no vitality as a contract until approved").

Here, as noted above, the Resolution Agreement was "subject to review by DOJ." Am. Compl. Ex. 4. As a result, the agreement was only tentative, and not binding upon the parties, absent that approval. See Cutler-Hammer, Inc., 194 Ct. Cl. at 794. Further, it is undisputed that DOJ declined to approve the Resolution Agreement. Compl. Ex. 8 (letter from USDA stating that "DOJ declined to approve the settlement [and] the settlement was thus void"); see also Def.'s Mot. App. at 15; Compl. Ex. 7; Am. Compl. Ex. 8. Accordingly, the Resolution Agreement became a "nullity" with no binding legal effect. See Darragh, 33 Ct. Cl. at 391. There was thus no valid agreement between the parties and the government would be entitled to judgment as a matter of law, even if the Court had subject matter jurisdiction.

## IV.    Plaintiffs' Other Claims

The government argues that the estates' remaining claims are not within the Court's subject matter jurisdiction and must be dismissed. See Def.'s Mot. at 10–12. As described above, in their original complaint, Plaintiffs alleged violations of ECOA, FOIA, Article I of the Constitution, the Fourth, Eighth, and Fourteenth Amendments to the Constitution, the Civil Rights Act of 1964, 42 U.S.C. § 1985, the North Carolina state constitution and bill of rights, a North Carolina state statute, the Clayton Act, and unidentified provisions of the Code of Federal Regulations. The Grants' amended complaint does not appear to include the majority of these claims, but appears to replace them with new causes of action for negligence, fraud, violations of

---

sufficient to establish the existence of an essential element to [its] case, and on which [it] will bear the burden of proof at trial.'" Zafer Taahhut Insaat ve Ticaret A.S. v. United States, 833 F.3d 1356, 1362–63 (Fed. Cir. 2016) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)) (third and fourth alterations in original).

the Fifth Amendment's Due Process clause, breach of the covenant of good faith and fair dealing, and a claim under § 14012 of the 2008 Farm Bill. Because the allegations in the amended complaint are somewhat difficult to follow, and in light of the estates' pro se status, the Court will address subject matter jurisdiction with respect to all of the claims set forth in both the original and amended complaints.

First, actions pursuant to ECOA "may be brought in the appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction." 15 U.S.C. § 1691e(f). But "[i]t is . . . well settled that this Court does not have subject-matter jurisdiction to consider [a] plaintiff's claims brought pursuant to the ECOA." Davis v. United States, 123 Fed. Cl. 235, 241 (2015) (citing, among others, Hall v. United States, 69 Fed. Cl. 51, 55–56 (2005)), aff'd, 642 F. App'x 982 (Fed. Cir. 2016). To the extent Plaintiffs are instead asserting jurisdiction under ECOA pursuant to § 741(d) of the 1999 appropriations act, Plaintiffs' complaint was not filed prior to October 21, 2000, nor does it seek judicial review of an administrative complaint refiled with the USDA pursuant to § 741(b) prior to October 21, 2000. See Pub. L. 105-277 § 741.[9] Accordingly, the Court does not have jurisdiction over any claims Plaintiffs are asserting under ECOA, and they must be dismissed.

With respect to disputes under FOIA, only the district courts have subject matter jurisdiction; the Court of Federal Claims does not have subject matter jurisdiction over alleged violations of its provisions. 5 U.S.C. § 552(a)(4)(B); Frazier v. United States, 683 F. App'x 938, 940 (Fed. Cir. 2017). Plaintiffs' claims under FOIA, therefore, must also be dismissed.

As to Plaintiffs' constitutional allegations, the estates do not identify which section of Article I the government has allegedly violated. Compl. ¶ 6(f). Article I of the Constitution generally sets out the composition and powers of the United States Congress. See generally, U.S. Const. Art. I. To the extent Plaintiffs are attempting to assert a violation of Article I's Contract Clause, the Court lacks jurisdiction over the same. El v. United States, 122 Fed. Cl. 707, 709 (2015) (citing, among others, McNeil v. United States, 78 Fed. Cl. 211, 225 (2007), aff'd, 293 F. App'x 758 (Fed. Cir. 2008)). The Contract Clause prohibits the states from "impairing the Obligation of Contracts" and is not a money-mandating provision as to the federal government. Plaintiffs do not identify any money-mandating provision in Article I as the basis for their claim and the Court must dismiss it for lack of jurisdiction. See Carpenter v. United States, 118 Fed. Cl. 712, 712–13 (2014) (finding that plaintiff's allegations of illegal confinement in violation of, among other things, Article I, did not assert a violation of a money-mandating constitutional provision).

Additionally, the Court lacks jurisdiction over claims under the Fourth Amendment, the Fifth Amendment's Due Process Clause, and the Eighth and Fourteenth Amendments because these provisions are not money-mandating. Trafny v. United States, 503 F.3d 1339, 1340 (Fed. Cir. 2007) (Eighth Amendment); Brown v. United States, 105 F.3d 621, 623 (Fed. Cir. 1997) (Fourth Amendment); Crocker v. United States, 125 F.3d 1475, 1476 (Fed. Cir. 1997) (Fifth

---

[9] In fact, Plaintiffs elected to proceed pursuant to § 741 in 1997 by joining the Pigford litigation in district court, after which Matthew Grant opted-out and negotiated the 1998 Resolution Agreement.

Amendment Due Process Clause); LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (Due Process and Equal Protection Clauses of Fourteenth Amendment). The Court must dismiss these claims as well.

The Court also has no jurisdiction over the estates' claim under the Civil Rights Act of 1964. Caravetta v. United States, 122 F. App'x 992, 993 (Fed. Cir. 2004) ("With respect to . . . the Civil Rights Act of 1964, it has long been held that the Court of Federal Claims lacks jurisdiction over such claims."); see also Pleasant-Bey v. United States, 99 Fed. Cl. 363, 368 (2011). Nor does it have jurisdiction over actions under 42 U.S.C. § 1985, as jurisdiction over actions pursuant to that section lies exclusively with the district courts. 28 U.S.C. § 1343(a); see also Willis v. United States, 96 Fed. Cl. 467, 470 (2011). Similarly, claims under the Clayton Act are outside the Court's jurisdiction because they are committed to the district courts. See Hufford v. United States, 87 Fed. Cl. 696, 703 (2009); see also 15 U.S.C. §§ 4, 18a(f). These claims are therefore dismissed.

As to Plaintiffs' state law claims, this Court cannot adjudicate claims founded upon state law and must also dismiss Plaintiffs' claims pursuant to North Carolina's constitution and its statutes. See Souders v. S.C. Pub. Serv. Auth., 497 F.3d 1303, 1307 (Fed. Cir. 2007); see also 28 U.S.C. § 1491.

With respect to Plaintiffs' claims of negligence and fraud, those claims sound in tort, and the Court of Federal Claims lacks jurisdiction over torts. Keene Corp. v. United States, 508 U.S. 200, 214 (1993); Brown, 105 F.3d at 623 (fraud); O'Connor v. United States, 355 F. App'x 412, 413 (Fed. Cir. 2009) (per curiam) (negligence); see also Rick's Mushroom Serv., Inc., 521 F.3d at 1343. These claims also, therefore, must be dismissed.

Plaintiffs' claim under the Farm Bill of 2008 is difficult to understand. The estates mention the statute in their amended complaint, but do not make any specific allegations based upon it. See Am. Compl. at 8 (describing history of § 14012); id. at 22–23 (quoting section). In Plaintiffs' brief in response to the government's motion, however, Plaintiffs assert that § 14012 of the 2008 Farm Bill is the basis for their request for remand to an administrative law judge. Pet'rs' Obj. to Resp't's Mot. to Dismiss (Pls.' Resp.) at 6, Docket No. 19.

Regardless of the claim Plaintiffs are attempting to assert pursuant to § 14012, the Court lacks jurisdiction over it. Section 14012 of the 2008 Farm Bill, also known as the Food, Conservation and Energy Act of 2008, authorized Pigford claimants who were late in filing for compensation under the consent decree, and were thus unable to obtain relief pursuant to it, to institute new proceedings to determine the merits of their claims. Food, Conservation, and Energy Act of 2008, Pub. L. No. 110–246, 122 Stat. 1651 (2008). But Congress gave exclusive jurisdiction over such claims to the district court for the District of Columbia. Id. Therefore, to the extent Plaintiffs are attempting to pursue relief pursuant to § 14012, it is outside the Court's jurisdiction and must be dismissed.[10]

---

[10] The Court also notes that relief under § 14012 is available only to Pigford claimants; Matthew Grant ultimately chose to opt out of that class.

Finally, Plaintiffs' allegations with respect to the Code of Federal Regulations are similarly unclear. The estates alleged in their original complaint a violation of "7 CFRs prohibiting discrimination in USDA farm programs," but did not identify which specific provisions were violated or otherwise identify a money-mandating regulation promulgated by the USDA. See Compl. at 17. In their amended complaint, Plaintiffs appear to allege violations of the USDA's anti-discrimination policy set out in 7 C.F.R. Part 15d and the § 741 administrative procedures contained in Part 15f, but still fail to identify which specific provision or provisions the USDA allegedly violated or how it did so. See Am. Compl. at 9, 18–20. In fact, the amended complaint's references to federal regulations appear more as a background discussion of the history of the Pigford litigation than an allegation of wrongdoing by the USDA with respect to Plaintiffs. See id.

In any event, to the extent Plaintiffs are attempting to assert a claim based upon the § 741(b) procedures contained in 7 C.F.R. Part 15f, the Court lacks jurisdiction over the same. Section 741 only provides this court with jurisdiction to review a USDA administrative decision if the underlying claim was refiled with the USDA before October 21, 2000, and the complaint in this court was filed within 180 days of the USDA's subsequent decision. Pub. L. 105-277 §§ 741(b), (d); see also 7 C.F.R. §§ 15f.5(c), 15f.26. Here, Plaintiffs have failed to plead or identify an administrative complaint refiled with the USDA prior to October 21, 2000, nor have they alleged a decision issued on that claim within the 180 days prior to filing suit here. Plaintiffs have thus not demonstrated that the Court has jurisdiction under § 741(d). See M. Maropakis Carpentry, Inc., 609 F.3d at 1327 (stating that plaintiffs bear the burden of demonstrating jurisdiction).

As to 7 C.F.R. Part 15d, that part sets out the USDA's general anti-discrimination policy. 7 C.F.R. § 15d.1. Plaintiffs do not point to any provision as money-mandating or even identify the specific provision the USDA allegedly violated. This is insufficient for Plaintiffs to meet their burden of demonstrating subject matter jurisdiction. But in any event, even if Plaintiffs had identified a money-mandating provision that the USDA allegedly violated, the Court would still lack jurisdiction over such a claim because Plaintiffs' discrimination claims are barred by the statute of limitations.

As noted above, "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. Plaintiffs allege throughout their original and amended complaints that the USDA discriminated against Matthew and Florenza Grant with respect to loans for their farm. See Am. Compl. at 9. But both Matthew and Florenza Grant had passed away by 2001. Compl. Ex. 6. Plaintiffs do not allege any instances of discrimination in violation of the USDA's policy after 2001. See generally, Am. Compl. Thus, to the extent Plaintiffs' allegations of discrimination are assertions that the USDA violated its anti-discrimination policy in Part 15d, those instances took place no later than 2001. Accordingly, even if the Court could have jurisdiction over a discrimination claim under part 15d, Plaintiffs' allegations of discrimination occurred well more than six years prior to the filing of the complaint in 2016 and are thus barred by the statute of limitations and must be dismissed.

Accordingly, for these reasons, all of Plaintiffs' claims are **DISMISSED** without prejudice for lack of subject matter jurisdiction.[11]

## V.  Plaintiffs' Motion for Remand

Plaintiffs' amended complaint contains a request that the case be remanded to an administrative law judge, pursuant to RCFC 52.2. Am. Compl. at 1. The estates appear to base this request on their allegation that the government "failed to live up to the bargain," presumably the Resolution Agreement, and that as a result Plaintiffs "should be reinstated into [Pigford] track b status and . . . have a hearing before the ALJ for actual damages." Am. Compl. at 15. They also assert that their request is pursuant to "section 14012 of the Food Energy and Conservation Act of 2008." Pls.' Resp. at 6. As noted above, however, § 14012 of that act revived certain potential Pigford litigants' claims, including the opportunity to pursue administrative relief before the USDA, but placed exclusive jurisdiction over any claims under that section in the district court for the District of Columbia. Pub. L. No. 110–246.

In any event, RCFC 52.2 provides that "[i]n any case within its jurisdiction, the court, on motion or on its own, may order the remand of appropriate matters to an administrative or executive body or official." RCFC 52.2(a) (emphasis added). Here, the Court lacks jurisdiction over the entirety of Plaintiffs' complaint. Therefore, because the Court does not have jurisdiction, it cannot remand Plaintiffs' claims, and Plaintiffs' motion is **DENIED**.

### CONCLUSION

Based on the foregoing, the government's motion to dismiss is **GRANTED** and Plaintiffs' claims are **DISMISSED without prejudice** for lack of subject matter jurisdiction. Because the Court lacks subject matter jurisdiction, Plaintiffs' motions for discovery are **DENIED** as moot. The Clerk is directed to enter judgment accordingly. Each side shall bear its own costs.

**IT IS SO ORDERED.**

ELAINE D. KAPLAN
Judge

---

[11] Because the Court does not have jurisdiction over Plaintiffs' complaint, Plaintiffs' motions for discovery are **DENIED** as moot.